# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| TONY FENSTERMAKER, | : | Case No. 2:24-cv-162 |
| | : | |
| Petitioner, | : | |
| | : | Judge James L. Graham |
| vs. | : | Magistrate Judge Elizabeth P. Deavers |
| | : | |
| WARDEN, SOUTHEASTERN | : | |
| CORRECTIONAL INSTITUTION | : | |
| | : | |
| Respondent. | : | |

# REPORT AND RECOMMENDATIONS

Tony Fenstermaker, a state prisoner proceeding with counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court to consider the Petition (ECF No. 1), the Return of Writ (ECF No. 7), Petitioner's Traverse (ECF No. 12), and the state court record. (ECF Nos. 6, 6-1, 6-2, 13-1). For the reasons that follow, it is **RECOMMENDED** that the petition be **DENIED** and this action be **DISMISSED WITH PREJUDICE**.

## I.     FACTUAL BACKGROUND

On December 10, 2020, a Delaware County, Ohio grand jury indicted Fenstermaker in Case No. 20 CRI 12 0772 on seven counts of Pandering Sexually Oriented Matter Involving a Minor in violation of Ohio Revised Code § 2907.322(A)(1) and two counts of Gross Sexual Imposition in violation of O.R.C. § 2907.05(A)(1). (ECF No. 6 at PageID# 32-37). Fenstermaker was indicted a second time on March 26, 2021, in Case No. 21 CRI 03 0176 on three counts of Having Weapons While Under Disability, in violation of O.R.C. § 2923.13 (A)(2).

The following represents the relevant facts and procedural history as recounted by the Fifth

District Court of Appeals ("Court of Appeals"):

{¶4} The parties…reached a resolution on both cases and a plea hearing was set for June 29, 2021. A visiting judge presided over the June 29, 2021, hearing. A Crim.R.11(F) plea agreement was signed by Fenstermaker and his attorney in each case on June 28, 2021. The agreements were filed in each case on June 30, 2021.

{¶5} On June 29, 2021, the plea hearing began with the 20 CRI 12 0772 case. Pursuant to the plea agreement, the state dismissed counts 5, 6, and 7 of the Indictment. The Court then proceeded,

| | |
|---|---|
| THE COURT: | Okay. So, Mr. Fenstermaker, are you voluntarily pleading guilty to Counts 1 through 4, the pandering charges, second degree felonies, and Counts 8 and 9, gross sexual imposition, fourth degree felonies? Are you voluntarily pleading guilty to those charges? |
| DEFENDANT: | Yes, Your Honor. |
| THE COURT: | Are you aware that when you enter a guilty plea to these charges, you allow the Court to find you guilty and you give up a number of constitutional rights? |
| | You give up the right to have a jury trial on these charges. At that trial you'd have a right to confront and cross-examine anyone who testifies against you. You'd have a right to issue subpoenas to get witnesses here to testify on your behalf. You'd have the right to require the State to prove your guilt beyond a reasonable doubt. You'd have the right to remain silent throughout the trial. And you would have the right to appeal if any Court rulings or jury verdicts or Court verdicts went against you in a trial. Are you voluntarily giving up those rights with regard to these four second degree felonies of pandering and these two fourth degree felonies of gross sexual imposition? |
| DEFENDANT: | Yes, Your Honor. |

The trial court continued with the colloquy in compliance with Crim.R. 11(C)(2)(a) and (b) by informing Fenstermaker of the nature of the charges against him, the maximum penalties involved, his eligibility for probation, and the required sex offender registration associated with the convictions. Fenstermaker acknowledged he understood. The trial court inquired if any promises or threats were made to Fenstermaker to obtain his plea. Fenstermaker answered in the negative. The trial

court further inquired if the Fenstermaker understood a guilty plea is an admission to the truth of the charges against him. Fenstermaker again confirmed he understood. The trial court further reviewed the Tier I sexual classification registration and reporting requirements with Fenstermaker. Fenstermaker informed the trial judge that he had been advised and understood the sexual offender classification and reporting requirements.

{¶6} The trial court then requested the state provide a statement of facts concerning the 20 CRI 12 0772 case. During this recitation, some confusion arose between the parties. The state insisted that Fenstermaker had touched the "vagina" of the victim; the defenses preferred the state use the term "erogenous zone." The trial judge and counsel then entered into a discussion wherein all parties agreed the distinction would have no effect on the plea agreement. At the time, the state was unwilling to amend its statement of facts. The parties agreed to continue the hearing for Fenstermaker to review discovery previously restricted to counsel only. The plea was continued to the next day, June 30, 2021.

{¶7} The parties returned the next day on June 30, 2021, to complete the plea. The trial court announced the cases and then proceeded to advise Fenstermaker of the maximum penalties and fines with respect to the 20 CRI 12 0772 case. The trial court further informed Fenstermaker of the mandatory sex offender registration. The trial court then advised Fenstermaker of the potential for post-release control and the consequences for violating this supervision. Fenstermaker confirmed he understood. The state then recited the statement of facts, changing its previous language to include the touching of "multiple erogenous zones" rather than the touching of breasts and vagina. No changes were made to the plea agreement. The trial court again inquired if the Fenstermaker was pleading voluntarily, and then Fenstermaker responded in the affirmative. The trial court also inquired if any promises or threats were made to obtain Fenstermaker's plea. Fenstermaker responded in the negative. The trial court then held the following colloquy with Fenstermaker:

> THE COURT: Okay. Thank you. Do you admit that you committed the crimes of sexual -- of pandering sexually oriented material involving a minor as alleged in Counts 1, 2, 3, and 4? Do you admit that you committed those crimes?
>
> DEFENDANT: Yes. Yes, Your Honor.
>
> THE COURT: And do you admit that you committed the crime of gross sexual imposition as alleged in Counts 8 and 9?
>
> DEFENDANT: Yes, Your Honor.
>
> THE COURT: Okay. Do you understand the nature of the charges and the possible defenses that you might have?

3

| | |
|---|---|
| DEFENDANT: | I do, Your Honor. |
| THE COURT: | All right. Are you satisfied with your attorney's advice and confidence? |
| DEFENDANT: | Yes, Your Honor. |
| THE COURT: | And are you under-currently under the influence of any alcohol or drugs? |
| DEFENDANT: | No, Your Honor. |
| THE COURT: | Okay. Then I will accept the -- the pleas and find Mr. Fenstermaker guilty of pandering sexually oriented material involving a minor, second degree felonies as alleged in Counts 1, 2, 3, and 4. I'll enter nolle prosequi as to Counts 5, 6, and 7. And I will find the defendant guilty of Counts 8 and 9, gross sexual imposition. |

After accepting Fenstermaker's pleas in case number 20 CRI 12 0772, the following exchange took place,

| | |
|---|---|
| MR. WALKER: | Your Honor, I don't know if you still intend to do this later -- I don't mean to rush you -- but we still need to do the plea in the second of the two cases, in 0176. |
| THE COURT: | I'm sorry. I couldn't hear you very well. Would you— |
| MR. WALKER: | Your Honor, we still need to complete the plea in 21CR 03 0176. I'm sorry if you had already planned to do that. I just wanted to remind the Court. |
| MR. KOFFEL: | There's a weapons under disability, a second indictment, Your Honor. Probation did a home visit, found some firearms. |
| THE COURT: | Okay. |
| MR. HARRIS: | Do you have that one? |
| THE COURT: | I probably have it here. |

The trial court advised Fenstermaker of the maximum penalties and fines. Further, pursuant to the plea agreement the state agreed to dismiss Count 2 and Count 3 of the Indictment. The following exchange the took place,

4

> THE COURT: Do you -- do you admit that you committed the crime of having weapons under disability as charged in –
>
> DEFENDANT: Yes, Your Honor.

The trial court advised Fenstermaker of the potential for post release control and the consequences for violating this supervision. The trial court also inquired if any promises or threats were made to obtain Fenstermaker's plea. Fenstermaker responded in the negative. After a rendition of the facts pertaining to Case Number 21 CRI 03 0176, the trial court accepted Fenstermaker's plea and found him guilty.

{¶8} The sentencing hearing took place on August 9, 2021, and the court imposed an aggregate 8 year prison term. The sentencing entry was filed August 10, 2021.

(ECF No. 6 at PageID# 160-165).

On September 9, 2021, Fenstermaker filed notices of appeal to the Court of Appeals in both cases. (*Id.* at PageID# 101-105). Fenstermaker's brief raised two assignments of error:

(1) Appellant's plea colloquy is invalid and violates due process of law because the trial court failed to strictly comply with Crim.R.11.

(2) The trial court's findings of guilt and the sentences are void because Mr. Fenstermaker never entered a plea of guilty or nolo contendere.

(*Id.* at PageID# 111).

On February 8, 2022, the Court of Appeals issued a consolidated decision affirming the convictions in Case No. 20 CRI 12 0772 but vacating the conviction for Having Weapons Under Disability in Case No. 21 CRI 03 0176. (*Id.* at PageID #159-173). The Court of Appeals denied Fenstermaker's motion for reconsideration. (*Id.* at PageID# 175-193). On remand, the state dismissed the charge for Having Weapons Under Disability in Case No. 21 CRI 03 0176 without prejudice. (*Id.* at PageID# 233, 235).

Fenstermaker filed a Notice of Appeal with Supreme Court of Ohio and a Memorandum in Support of Jurisdiction. (*Id.* at PageID# 195-209). On October 11, 2022, the Supreme Court of Ohio declined jurisdiction. (*Id.* at PageID# 228).

On August 2, 2022, Fenstermaker filed an Application for Reopening his Appeal pursuant to App. R. 26(B). (*Id.* at PageID# 237-246). He raised two assignments of error:

(1) Appellate counsel was ineffective for failing to raise the issue that trial counsel was ineffective for failing to raise the issue that the state never provided a bill of particulars, prior to defendant/appellant's change of plea in violation of appellant's right to due process under the Sixth Amendment to the United States Constitution.

(2) Appellate counsel was ineffective for failing to raise the issue that trial counsel was ineffective for failing to raise the issue that the state committed prosecutorial misconduct.

(*Id.* at PageID# 239-244). On September 12, 2022, the Court of Appeals denied Fenstermaker's application. (*Id.* at PageID# 258-266). He subsequently filed a Notice of Appeal to the Supreme Court of Ohio, which declined jurisdiction. (*Id.* at PageID# 268-292, 307).

## II.    FEDERAL HABEAS PROCEEDINGS

On January 16, 2024, Fenstermaker filed the instant federal habeas petition. He asserts four grounds for relief:

**GROUND ONE**:    Petitioner's plea was invalid because the trial court failed to strictly comply with Crim. R. 11.

**Supporting Facts:**    Petitioner was not advised of any of his constitutional rights under Crim. R. 11(C).

**GROUND TWO:**    Petitioner never entered a plea of guilty thus voiding his sentences.

**Supporting Facts:**    The tacit acquiescence to plead is insufficient and strict compliance is essential, with Crim. R. 11. The colloquy in the instant case is not in compliance with constitutional requirements.

**GROUND THREE:**    Ineffective assistance of appellate counsel for failing to raise the issue that trial counsel was ineffective for failing to raise the issue that the state never provided a bill of particulars.

**Supporting Facts:**    Defendant/Appellant's change of plea hearing in violation of Appellant's right to due process under the Sixth Amendment to the constitution.

**GROUND FOUR:**   Appellate counsel was ineffective for failing to raise the issue that the state committed prosecutorial misconduct.

**<u>Supporting Facts</u>:**   The state prevaricated and made false statement entered into the record that petitioner was visiting sex sites while out on bond via his home computer and/or phone. Trial counsel was ineffective for failing to request a suppression hearing of state's false evidence and unsupported verbal character assassination of petitioner.

(ECF No. 1 at PageID# 7, 9, 10, 12).

On May 13, 2024, Respondent filed a Return of Writ.  (ECF No. 7).  Respondent contends that Grounds One and Two are non-cognizable in federal habeas review (*id.* at PageID# 541-542, 544), Grounds Three and Four are procedurally defaulted (*id.* at PageID# 545-548), and all four grounds for relief lack merit. (*Id.* at PageID# 543, 545, 549-552). Fenstermaker filed a Traverse on August 15, 2024, disputing Respondent's procedural defenses and arguing the merits of his claims. (ECF No. 12). Fenstermaker withdrew Ground Four in his Traverse. (*Id.* at PageID# 577).

## III.   STANDARDS OF REVIEW

### A.  AEDPA

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The United States Supreme Court has described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, 571 U.S. 12, 20 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA...imposes a highly deferential standard for evaluating state–court rulings and demands that state-court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).

7

AEDPA limits the federal courts' authority to issue writs of habeas corpus and forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The United States Court of Appeals for the Sixth Circuit has explained the meaning of the standards found in § 2254(d)(1) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ "if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies the law or bases its decision on an unreasonable determination of the facts, in light of the record before the state court. *Harrington v. Richter*, 562 U.S. 86, 100, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011); *Williams*, 529 U.S. at 412–13, 120 S.Ct. 1495.

*Lang v. Bobby*, 889 F.3d 803, 810 (6th Cir. 2018).

Moreover, under § 2254(d)(2), a state court's factual determination is not "unreasonable" merely because the federal habeas court would have reached a different conclusion. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Instead, a state court's factual findings are "only unreasonable where they are 'rebutted by clear and convincing evidence' and do not have support in the record." *Moritz v. Woods*, 692 F. App'x 249, 254 (6th Cir. 2017) (quoting *Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)) (internal quotation marks omitted). Moreover, "[f]actual determinations by state

courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding[.]" *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (quoting *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003)).

The burden of satisfying AEDPA's standards rests with the petitioner. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### B. Procedural Default

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to first present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If the prisoner fails to do so, but still has an avenue open to present the claims, then the petition is subject to dismissal for failure to exhaust state remedies. *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). Where a petitioner has failed to exhaust claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

Over time, the term "procedural default" has come to describe a situation where a person convicted of a crime in a state court fails (for whatever reason) to properly present a particular claim to the highest court of the state so that the state has a fair chance to correct any errors made in the course of the trial or the appeal, before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th

Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court. As the Supreme Court found in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to [the] failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case – that is, they are "procedurally defaulted." It is well settled that "[a] common example of a procedural default is a failure to raise a claim in state court in a timely manner." *Gibbs v. Huss*, 12 F.4th 544, 550 (6th Cir. 2021).

To determine whether procedural default bars a habeas petitioner's claim, courts in the Sixth Circuit engage in a four-part test. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also McNeill v. Bagley*, 10 F.4th 588, 595 (6th Cir. 2021) (citing the four-part *Maupin* standard). First, the court must determine whether there is a state procedural rule that is applicable to the petitioner's claim and whether the petitioner failed to comply with the rule. Second, the court must determine whether the state courts actually enforced the state procedural sanction. Third, the court must determine whether the forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. Finally, if the court determines that a state procedural rule was not complied with and the rule has an adequate and independent state ground, then the petitioner may still obtain review of his or her claims on the merits if the petitioner establishes: (1) cause sufficient to excuse the default and (2) that he or she was actually prejudiced by the alleged constitutional error. *Maupin*, 785 F.2d

at 138. In order to establish cause, a petitioner must show that "some objective factor external to the defense" impeded the petitioner's efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The petitioner bears the burden of showing cause and prejudice. *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001).

## IV. DISCUSSION

### A. Procedural Default

Respondent argues that Ground Three is procedurally defaulted because the Court of Appeals dismissed it due to Fenstermaker's failure to comply with App.R. 26(B)(2)(d). (ECF No. 6 at PageID# 545-548). Fenstermaker argues that Ground Three is not procedurally defaulted because the Court of Appeals addressed the claim on the merits. (ECF No. 12 at PageID# 564-565).

Central to this ground, the Court of Appeals found that Fenstermaker failed to include a sworn statement of the basis for the claim that his appellate counsel's representation was deficient. (ECF No. 6 at PageID# 262). In discussing this omission, the Court of Appeals concluded:

> Because Fenstermaker has not complied with App.R. 26(B)(2)(d), we need not address the merits of his application to reopen as that failure independently warrants the denial of the application. However, in the interest of justice, we will address Fenstermaker's proposed assignments of error.

(*Id.* at PageID# 263).

"[A] procedural default does not bar consideration of a federal claim on…habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989). Arguably, the Court of Appeals was equivocal about whether it enforced App.R. 26(B)(2)(d), but the Court cannot say that it "clearly and expressly" dismissed Ground Three on a state procedural bar. For this reason, Ground Three is not procedurally defaulted and will be addressed on the merits.

**B. Merits**

*i.    Grounds One and Two*

In Grounds One and Two Fenstermaker challenges the voluntariness of his plea. Particularly, he contends that the trial court denied his constitutional rights because it failed to comply with Ohio Criminal Rule 11 (ECF No. 1 at PageID# 7) and claims that he never officially entered a plea of guilty. (*Id.* at PageID# 9). Respondent argues that Grounds One and Two are non-cognizable and lack merit. (ECF No. 7 at PageID# 541-543).

A claim that the trial court failed to comply with Ohio Criminal Rule 11 is a state-law claim is not cognizable on federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Rose v. Warden, Chillicothe Corr. Inst.*, No. 1:15-cv-353, 2018 WL 1425971, at *7 (S.D. Ohio Mar. 22, 2018) (claim that the trial court failed to follow Ohio Criminal Rule 11 when accepting a guilty plea is not cognizable on federal habeas review), *report and recommendation adopted*, No. 1:15-cv-353, 2018 WL 4566324 (S.D. Ohio Sept. 24, 2018).

Indeed, Fenstermaker argued in his direct appeal briefs that the trial court failed to strictly comply with the requirements of Ohio law (ECF No. 6 at PageID# 121-130, 201-208) and even acknowledged that the analysis would be "looser" if his plea had been accepted in federal court. (*Id.* at PageID# 155). Fenstermaker's arguments in Grounds One and Two that he is entitled to relief because the trial court failed to comply with the strict requirements of Ohio law should be dismissed as state-law claim that is non-cognizable in federal habeas review.

That said, the Court broadly construes Ground One along with Ground Two as asserting a claim that the plea was involuntary because it violated his due process rights under the Fourteenth Amendment. The Fourteenth Amendment's Due Process Clause guarantees that a guilty plea must

12

be made voluntarily and intelligently with sufficient awareness of the relevant circumstances and likely consequences. *Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *see also Brady v. United States*, 397 U.S. 742, 748 (1970); *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994). "[A] plea does not qualify as intelligent unless a criminal defendant first receives 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Bousley v. United States*, 523 U.S. 614, 618 (1998) (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)). In *Brady*, the Supreme Court adopted the following standard for determining the voluntariness of a guilty plea:

> [A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

*Brady*, 397 U.S. at 755 (quoting *Shelton v. United States*, 246 F.2d 571, 572 n.2 (5th Cir. 1957) (en banc), *rev'd on other grounds*, 356 U.S. 26 (1958)). The voluntariness of a guilty plea must be assessed in light of all the relevant circumstances surrounding the plea. *Brady*, 397 U.S. at 749; *King*, 17 F.3d at 153 (and cases cited therein). "[T]he representations of the defendant, his lawyer, and the prosecutor at [the guilty plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

Fenstermaker argued in his direct appeal that his plea did not comply with Ohio Criminal Rule 11 because he was not advised of his constitutional rights on the second day of the plea hearing, June 30, 2021 (ECF No. 6 at PageID# 123), and because he never said the word "guilty." (*Id.* at PageID# 128-129). The Court of Appeals rejected both arguments. It concluded that

Fenstermaker was advised of his rights on June 29, 2021, and citing *United States v. Smith*, 743 F. App'x 606, 610 (6th Cir. 2018), found that there was "no authority holding that a continuance requires the court to revisit what a defendant has acknowledged before." (ECF No. 6 at PageID# 168-169). The Court of Appeals also concluded that "Fenstermaker's admission that he committed the crimes is an admission of his guilt, which is the functional equivalent to entering a plea of 'guilty.'" (*Id.* at PageID# 171).

The record reflects that the trial court advised Fenstermaker on June 29, 2021, of the nature of the charges against him and the maximum possible sentences. (ECF No. 6-1 at 439-444). He was also advised that by pleading guilty he was giving up his right to a jury trial, right to confront witness against him, right to require the state to prove his guilt beyond a reasonable doubt, and right to remain silent. (*Id.* at PageID# 442-443). Fenstermaker advised the court that the was voluntarily waiving his rights, understood the maximum sentences, and was admitting the truth of the charges. (*Id.* at PageID# 443-444). On June 30, 2021, the trial court asked Fenstermaker if he was voluntarily pleading guilty to the counts in the indictment and whether he committed the crimes of pandering and gross sexual imposition and he responded, "yes." (ECF No. 13-1 at PageID# 584, 588).

Fenstermaker argues in his Traverse that it was unreasonable for the Court of Appeals to rely on *United States v. Smith*, and the case is distinguishable on the facts because the June 30, 2021, hearing was not a true continuance, but instead the plea hearing began anew. (ECF No. 12 at PageID# 568-571). As noted above, the Supreme Court specifically found that "the voluntariness of a guilty plea must be assessed in light of all the relevant circumstances surrounding the plea." *Brady*, 397 U.S. at 749. For this reason, the Court cannot say it was unreasonable for the Court of Appeals to analyze the voluntariness of Fenstermaker's plea based

on the hearings on both June 29, 2021, and June 30, 2021. Habeas relief is not due unless the petitioner can show that no fairminded jurist would have reached the same conclusion as the Court of Appeals or that its conclusion is contrary to a United States Supreme Court opinion. *See Harrington v. Richter*, 562 U.S. 86, 101 (2011); *Williams v. Taylor*, 529 U.S. 362, 365 (2000). That Fenstermaker cannot do.

Fenstermaker also cannot show that his plea was involuntary because he did not say the word, "guilty." The validity of a guilty plea is determined not by reference to some magic words but from the totality of the circumstances surrounding it. Here, there was the necessary affirmative showing in the record that the plea was intelligently and voluntarily made as required by *Boykin v. Alabama*, 395 U.S. 238 (1969). *Boykin* does not require that particular words be used when advising a defendant of rights he is waiving by pleading guilty or even that the defendant be advised of all three constitutional rights mentioned in *Boykin*. *See United States v. Gearin*, 496 F.2d 691, 696 (5th Cir.1974) ("Specific judicial incantations of constitutional rights is not the litmus test under ... the Constitution."). As the Supreme Court itself has stated, *Boykin's* "requirement [is] that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily." *Brady v. United States*, 397 U.S. 742, 747 n. 4 (1970). "The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).

Grounds One and Two should be dismissed because Ohio Criminal Rule 11 is non-cognizable in federal habeas review and the record reflects that Fenstermaker's plea was consistent with the Due Process Clause of the Fourteenth Amendment.

ii.    *Ground Three*

15

In Ground Three Fenstermaker contends that his appellate counsel was ineffective. Particularly, he claims his appellate counsel should have argued on direct appeal that his trial counsel was ineffective for failing to argue that the state never produced a bill of particulars. Even if this claim were not procedurally defaulted, the Court would find it lacks merit for the reasons below.

"In all criminal prosecutions," the Sixth Amendment affords "the accused...the right...to Assistance of Counsel for his defence." U.S. Const. amend. VI. "Only a right to 'effective assistance of counsel' serves the guarantee." *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011) (citation omitted). The United States Supreme Court set forth the legal principles governing claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984). To establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010). With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential.... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Strickland*, 466 U.S. at 689.

As to the second prong, the Supreme Court held: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome." *Id.* at 694.

16

When an exhausted claim of ineffective assistance of trial counsel is raised in a federal habeas petition, review under AEDPA is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). That is, "*Strickland* requires deference to counsel and AEDPA requires deference to the state court." *Moody v. Parris*, No. 20-5299, 2022 WL 3788503, at *4 (6th Cir. Aug. 30, 2022). The question then is not whether trial counsel was ineffective, but "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101. The Supreme Court clarified the double deference that is due:

> This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Id.* (internal citation omitted).

The *Strickland* test applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Burger v. Kemp*, 483 U.S. 776 (1987). To evaluate a claim of ineffective assistance of appellate counsel, the court must assess the strength of the claim that counsel failed to raise. *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011), (citing *Wilson v. Parker*, 515 U.S. 682, 707 (6th Cir. 2008)). Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id.*, (citing *Wilson*). The attorney need not advance every argument, regardless of merit. *Jones v. Barnes*, 463 U.S. 745, 751-752 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and

focusing on one central issue if possible, or at most on a few key issues."). Effective appellate advocacy is rarely characterized by presenting every non-frivolous argument which can be made. *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003); *Williams v. Bagley*, 380 F.3d 932, 971 (6th Cir. 2004); *see Smith v. Murray*, 477 U.S. 527 (1986). "Only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of [appellate] counsel be overcome." *Dufresne v. Palmer*, 876 F.3d 248 (6th Cir. 2017), (quoting *Fautenberry v. Mitchell*, 515 F.3d 614, 642 (6th Cir. 2008)).

The record reflects that an issue arose during the June 29, 2021, plea hearing when the state recited the factual basis for the plea. The state said that Counts 1-4 were based on videos taken by Fenstermaker showing he fondled the victim's breasts, stomach, and back. Counts 8 and 9 were based on the victim's interview, where she stated that Fenstermaker touched her breast and vagina. (ECF No. 6-1 at PageID# 446). Fenstermaker challenged the part of the factual basis for Count 9, where the state said he touched the victim's vagina. (*Id.* at PageID# 446-449). Fenstermaker's counsel complained that the defense was unaware that the state was alleging that he had touched the victim's vagina, and the dispute arose because the state never responded to his request for a bill of particulars. (*Id.* at PageID# 449). The defense suggested that the state change the language in the factual basis to "erogenous zone" (*Id.* at PageID# 450-451). The state responded that it would permit Fenstermaker to review the victim's interview, and the hearing recessed to the next day. (ECF No. 6-1 at PageID# 453). On June 30, 2021, Fenstermaker did not object to the factual basis, which the state changed to "erogenous zone" (ECF No. 13-1 at PageID# 586-587), and the trial court accepted the plea. (*Id.* at PageID# 589).

Fenstermaker asserted Ground Three in his Application for Reopening his Appeal pursuant to App. R. 26(B). (ECF No. 6 at PageID# 239-244). The Court of Appeals concluded that his

appellate counsel was not ineffective because Fenstermaker never denied making videos fondling the victim's breasts, which was sufficient evidence for a conviction under the statute and he "failed to articulate how having a bill of particulars would have changed the result." (ECF No. 6 at PageID# 264).

Fenstermaker argues in his Traverse that he is entitled to habeas relief because the plea hearing proceeded without his knowledge of the nature of the charges against him. (ECF No. 12 at PageID# 575-577). This argument is contradicted by the record. The plea hearing was in fact continued until the next day because the state made it very clear that they were asserting Fenstermaker touched the victim's vagina. (ECF No. 6-1 at PageID# 452-453). The state also advised Fenstermaker on June 29, 2021, that it intended to argue at the sentencing hearing that he touched the victim's vagina, which was supported by the victim's interview. (*Id.* at PageID# 450-451).

Fenstermaker's Traverse also fails to articulate how a bill of particulars would have made any difference in his plea. Ohio Revised Code § 2907.05 prohibits "sexual contact," defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." Ohio Rev. Code § 2907.01. Thus, the use of "erogenous zone" in the factual basis for the plea on June 30, 2021, was consistent with the langue of the statute under which Fenstermaker was charged. In any event, Fenstermaker assented to the language "erogenous zone" on June 30, 2021, and as noted by the Court of Appeals, never denied that he touched the victim's breast.

A bill of particulars made no difference to Fenstermaker's plea because the state provided the information about Count 9 during the June 29, 2021, hearing, he was given time to contemplate

the consequences of the allegations and review the video of the victim's interview during the recess, and he proceeded with the guilty plea the next day. Fenstermaker's argument that without the bill of particulars he was unaware of the charges against him is simply without merit.

Fenstermaker failed to demonstrate that the Court of Appeals' conclusion that he was not prejudiced, and his appellate counsel was not ineffective is contrary to or an unreasonable application of *Strickland*. Ground Three lacks merit and should be dismissed.

## V.    CONCLUSION

Fenstermaker's claims are without merit. It is therefore **RECOMMENDED** that the habeas petition be **DENIED,** and this action be **DISMISSED WITH PREJUDICE.**

For the foregoing reasons, the Undersigned **RECOMMENDS:**

1. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the petition because petitioner has not stated a "viable claim of the denial of a constitutional right" or presented an issue that is "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (*citing Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by a petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** Petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman*, 117 F.3d 949, 952 (6th Cir. 1997).

## <u>PROCEDURE ON OBJECTIONS</u>

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

**IT IS SO RECOMMENDED**.


March 3, 2025                                              *s/ Elizabeth A. Preston Deavers*
                                                          Elizabeth A. Preston Deavers
                                                          UNITED STATES MAGISTRATE JUDGE